STATE OF MAINE  
PENOBSCOT, ss.

UNIFIED CRIMINAL DOCKET  
BANGOR  
DOCKET NO. PEN-CD-CR-19-332

ROBERT G. BURTON,  
Petitioner

v.

DECISION AND JUDGMENT ON  
PETITION FOR POST-CONVICTION REVIEW

STATE OF MAINE,  
Respondent

    This matter came forward before the undersigned on November 20th and 21st, 2023, with respect to Petitioner Robert G. Burton's Petition for Post-Conviction Review. After hearing, and after the Court has had an opportunity to review the entire file, including the trial file and transcripts, pertinent caselaw, statutory citations and hearing transcript, the Court enters the following **Decision and Judgment** based upon the following Findings of Fact and Conclusions of Law set forth below:

*Historical Background:*

    1. Petitioner was charged with the intentional or knowing murder of Stephanie Gebo as well as the Class C felony of Possession of a Firearm by a Prohibited Person, both offenses occurring on June 5, 2015. Petitioner was indicted for both offenses on October 29, 2015.

    2. Petitioner asked the Court in writing to remove his court-appointed attorney and appoint new counsel on or about December 15, 2015, but withdrew his request on or about December 28, 2015.

3. By letter received by the Clerk on March 21, 2016, Petitioner fired his attorney and sought substitute counsel. At this time Petitioner had co-counsel.

4. Meanwhile, counsel sought a change of venue from Piscataquis County to Penobscot County by motion filed April 14, 2016, which was not objected to by the State. The motion was granted by the undersigned that same day.

5. According to the Order dated April 22, 2016, counsel and Petitioner had addressed whatever differences they had and so counsel remained on the case.

6. The second attorney appointed to represent Petitioner filed a Motion to Withdraw at Petitioner's request on June 6, 2016. The motion was granted on June 22, 2016, and substitute counsel was appointed.

7. Petitioner's attorneys filed a Motion to Suppress on June 29, 2016.[1]

8. Petitioner filed his own motion seeking to reinstate venue in the matter to Piscataquis County as well as remove his two attorneys on July 27, 2016, only to withdraw the motions on July 28, 2016.

9. Petitioner's counsel filed a seven-page Motion in Limine on August 2, 2016.

10. Both sides also filed written questionnaires in preparation for trial. Jury selection was scheduled to begin on August 22, 2016, with trial to begin on August 25, 2016.

11. Petitioner filed a request for co-counsel to be removed as well as change venue back to Piscataquis County on or about August 9, 2016.

12. The undersigned, after conducting a hearing on the latest motions filed by Petitioner himself, granted the motion removing counsel and continued the hearing date by Order dated August 11, 2016. The Court also appointed as substitute counsel an attorney Petitioner had specifically requested as a replacement.

13. The attorney (hereinafter "trial counsel") filed an objection to the State's request for a handwriting sample from Petitioner. The Court overruled the objection and granted the State's request by Order dated November 3, 2016.

---

[1] This motion was eventually resolved by agreement of counsel and the terms of the agreement were put on the record on August 30, 2017, prior to jury selection and trial.

2

14. Trial counsel filed a Motion in Limine on or about August 16, 2017, attempting to persuade the Court to admit a sixteen-page letter from the Petitioner to the deceased. The Court denied the motion by Order dated September 1, 2017.

15. Petitioner waived his right to a jury trial with respect to Count II only on August 30, 2017.

16. Trial began on September 25, 2017. A verdict of guilty was returned on October 5, 2017. On December 15, 2017, Petitioner was sentenced to fifty-five years to the Department of Corrections on Count I, and four years on Count II.

17. Petitioner filed an appeal of his conviction on or about December 28, 2017. Petitioner also filed an application to appeal his sentence on the same date. Leave to appeal his sentence was denied on March 6, 2018. The Law Court affirmed the judgment of conviction on December 11, 2018.

18. Petitioner filed a pro se Petition for Post-Conviction Review dated January 28, 2019. Counsel (hereinafter "PCR counsel") was appointed to represent Petitioner on his "PCR" by the undersigned by Order dated March 6, 2019.

19. PCR counsel sought and was granted a ninety-day extension to determine whether an amended petition should be filed by Order dated April 2, 2019.

20. Petitioner filed a self-styled motion to recuse the undersigned from any involved in the PCR on May 6, 2019. Petitioner also filed motions seeking to preserve Petitioner's cell phone as well as that of the deceased at the same time. Petitioner also filed motions to "compel compliance" of the State Police and the Office of the Attorney General with regard to discovery of "extremely crucial exculpatory evidence."

21. PCR counsel filed a Motion to Withdraw on May 28, 2019, for the reasons stated in the motion. The motion was granted by Order of the undersigned on July 18, 2019. New post-conviction counsel was appointed (hereinafter "PCR counsel #2"), and a hearing date for Petitioner's pro se motions was set for October 16, 2019.

22. PCR counsel #2 sought an extension of the deadline to file an amended petition on September 30, 2019. Thereafter, the Respondent filed a Motion for Discovery on October 18, 2019.

23. By Order dated October 31, 2019, the undersigned set December 6, 2019, as the deadline for filing an amended petition, noted that the motion to recuse had been withdrawn by Petitioner, granted Petitioner's motion to preserve evidence, and scheduled a status conference for January 14, 2020.

24. PCR counsel #2 filed a "Motion for Release of Property For Expert Testing" on December 2, 2019, concerning the deceased's cell phone. PCR counsel #2 also filed another request to extend the deadline for filing an amended petition to "approximately April 6, 2020."

25. Notwithstanding the above request, PCR counsel #2 filed an Amended Petition on December 6, 2019. PCR counsel #2 also sought and was granted a continuance of the next status conference by Order dated February 24, 2020.

26. Petitioner resumed filing pro se motions on April 24, 2020, including a motion seeking to be "appointed as Co-Counsel to my Post Conviction Review case."

27. By Order dated June 9, 2020, the undersigned: (1) denied Petitioner's request to be appointed "co-counsel" with PCR counsel #2; (2) ordered that PCR counsel #2 review Petitioner's filings and notify the Court on or before July 7, 2020, if he wanted to proceed to advance on the motions and, if so, the mechanism for doing so; and (3) ordered any amendments to the PCR petition to be filed on or before August 7, 2020.

28. PCR counsel #2 filed his Motion to Withdraw on June 10, 2020, because Petitioner wanted to represent himself. Petitioner again sought to have the undersigned recuse himself by motion filed June 12, 2020.

29. After conducting a hearing on the pending motions on July 2, 2020, the undersigned allowed PCR counsel #2 to withdraw in part, ruling that counsel would stay involved as "stand-by" counsel. The Court also denied Petitioner's latest motion for recusal. The undersigned signed an Order encompassing the above along with other "housekeeping" matters dated August 7, 2020.

30. Attempts to move the case along were negatively impacted by the COVID-19 pandemic. PCR counsel #2 unfortunately relocated to Massachusetts, and accordingly requested to withdraw. Petitioner did not object, and so the Court allowed PCR counsel #2 to withdraw and appointed PCR counsel #3 in his place.

31. PCR counsel #3 moved to withdraw on January 5, 2021, after Petitioner requested his removal based upon a conversation Petitioner had with another attorney.

The undersigned granted the motion and appointed the attorney Petitioner had spoken with as PCR counsel #4.

32. PCR attorney #4 sought yet another extension by which to file an amended petition, which the Court granted. The Court extended the deadline to May 21, 2021. That attorney then moved to withdraw by motion dated June 23, 2021, and PCR counsel #5 was appointed on September 13, 2021. Petitioner filed a "Motion to Vacate Appointment" on September 24, 2021.

33. PCR attorney #6 was then appointed to represent Petitioner and filed an Amended Petition for Post-Conviction Review on March 30, 2022.

34. On or about June 29, 2022, hearing was scheduled for August 22-24, 2022. However, PCR attorney #6 filed a Motion to Withdraw on August 18, 2022. The motion was granted over the objection of Petitioner by the undersigned on September 20, 2022.

35. PCR attorney #7 was appointed on November 28, 2022. He moved to withdraw, citing his current caseload as well as "his lack of experience in this area of law." The Court reluctantly granted the motion in an Order dated February 2, 2023.

36. PCR attorney #8 was appointed to represent Petitioner, and has thankfully stayed on as counsel, along with co-counsel who was appointed on August 2, 2023.[2]

37. Hearing was had on November 20 and 21, 2023. By agreement of counsel, the Court admitted the affidavit of Professor Thea Johnson into evidence by Order dated January 3, 2024. The Court, in the same Order, gave Petitioner's counsel until February 16, 2024, to file a post-hearing memorandum of law and the State's counsel until March 29, 2024, to file any response. Finally, Petitioner's counsel was given until April 12, 2024, to file any reply memorandum.

*Issues:*

38. Petitioner filed an amended Petition on June 9, 2023, alleging seven grounds for relief. Of those grounds, five allege ineffective assistance of counsel for different reasons, one alleges ineffective assistance of appellate counsel, and one alleges "lack of state and federal due process and right to fair trial" for three different reasons. The

---

[2] Unfortunately, Petitioner was not administered his prescribed medications at the jail on the eve of hearing in August, forcing the matter to be continued again. The case was finally heard on November 20-21, 2023, at the Knox County Courthouse, whose staff graciously agreed to be the situs for the hearing.

5

grounds alleged are appended hereto and incorporated by reference herein as "Exhibit 1."

### Standard of Review:

39. "The Sixth Amendment to the United States Constitution and <u>article I, section 6 of the Maine Constitution</u> ensure that a criminal defendant is entitled to receive the effective assistance of an attorney." *Watson v. State*, 2020 ME 51, ¶ 17, 230 A.3d 6 (quoting *McGowan v. State*, 2006 ME 16, ¶ 9, 894 A.2d 493); *see Gordon v. State*, 2024 ME 7, ¶ 11, 308 A.3d 228.

40. When reviewing a claim of ineffective assistance of counsel, the undersigned must apply the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the petitioner to prove that (1) trial counsel's performance fell below an objective standard of reasonableness and (2) the errors of trial counsel actually had an adverse effect on the defense. *Winchester v. State*, 2023 ME 23, ¶¶ 6-7, 291 A.3d 707; *Cardilli v. State*, 2024 ME 25, ¶ 27, 314 A.3d 224.

41. The first prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The second prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

42. A defendant is not required to show that their counsel's deficient conduct more likely than not altered the outcome of the case; rather, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cardilli*, 2024 ME 25, ¶ 31, 314 A.3d 224 (quoting *Theriault v. State*, 2015 ME 137, ¶ 19, 125 A.3d 1163). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Theriault*, 2015 ME 137, ¶ 19, 125 A.3d 1163).

43. *Strickland* requires the Court to evaluate the totality of circumstances and notes that there is a strong presumption that trial strategy and tactics fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 681, 689. Accordingly, judicial scrutiny of trial counsel's performance is supposed to be highly deferential. *Id.* at 689; *Theriault*, 2015 ME 137, ¶ 37, 125 A.3d 1163 (Alexander, J., dissenting) (quoting *Strickland*, 466 U.S. at 689).

44. To meet his burden, the petitioner must show actual prejudice. *Gordon*, 2024 ME 7, ¶ 13, 308 A.3d 228.

6

45. The Law Court in post-conviction review matters has regularly instructed trial courts to be cautious in their evaluation of trial counsel's performance in order to avoid reaching a result based solely on hindsight. *See, e.g., id.* ¶ 19; *Philbrook v. State*, 2017 ME 162, ¶ 7, 167 A.3d 1266; *Levesque v. State*, 664 A.2d 849, 851 (Me. 1995). The Law Court has repeatedly held that it will accord trial counsel great deference in their tactical decisions, which are reviewable solely for "manifest unreasonableness." *Twist v. State*, 617 A.2d 548, 550 (Me. 1992); *see, e.g., Pratt v. State*, 2023 ME 66, ¶ 22, 303 A.3d 661; *Pierce v. State*, 463 A.2d 756, 759 (Me. 1983). "Manifest unreasonableness occurs only when counsel's performance deprives the defendant of a substantial ground of defense." *Twist v. State*, 617 A.2d at 550.

46. Indeed, a post-conviction court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Middleton v. State*, 2015 ME 164, ¶ 13, 129 A.3d 962 (quoting *Strickland*, 466 U.S. at 689).

### *Findings of Fact and Conclusions of Law:*

(The undersigned will discuss below each of the five grounds that Petitioner has alleged in his post-hearing memoranda.)[3]

**I. Failure to investigate Petitioner's mental health history and "childhood circumstances" for use at trial and sentencing:**

47. Notwithstanding Petitioner's testimony to the contrary, trial counsel testified that the lengthy handwritten letter of Petitioner that the State was going to enter into evidence made it very problematic for trial counsel to argue that abnormal condition of mind or insanity were going to be viable defenses at trial. Thus, it was reasonable for trial counsel to build their defense around contentions that the shooting was accidental and/or necessary for self-defense. This makes sense to the undersigned. The Court also agrees with trial counsel that gathering and presenting Petitioner's mental health records for sentencing would have made little to no difference to the sentencing analysis of the Court (nor to a jury for that matter).

48. The undersigned heard from both Dr. Preter for the Petitioner and Dr. Riley for the State. The Court found Dr. Riley's testimony quite straightforward and of merit,

---

[3] To the extent Petitioner has failed to present evidence and post-hearing argument on other claims raised his original and amended petitions for post-conviction relief, the Court will not discuss them further and summarily denies any such claims on the merits.

and thus gives it great weight. Dr. Preter's testimony and his resulting conclusions, on the other hand, struck the Court as being based primarily upon Petitioner's self-report, something that the undersigned largely either discounts or rejects.

49. As Dr. Riley opined, Dr. Preter's findings and testimony "did not follow the data" and did not explain the issues relevant to the Court. It is certainly conceivable that Petitioner's mental health history could well have been determined to be an aggravating factor at sentencing instead of a mitigating factor.[4]

50. Trial counsel testified that they had no discussions with Petitioner concerning using a mental health expert or having a psychological evaluation performed on Petitioner because, in light of the Petitioner's letter that the State was intending to offer into evidence at trial, trial counsel decided on a defense theory that the shooting was an accident and/or necessary for self-defense.

51. Even if trial counsel should have investigated and assumedly discovered the mental health evaluation of Petitioner from July 2002 and/or discovered the seventy-two-hour hospitalization of Petitioner in July 2002, there is insufficient support in the record to demonstrate that such evidence actually would have resulted in a reasonable probability that the outcome of the trial would have been different, despite Dr. Preter's and Professor Johnson's respective opinions to the contrary. As noted above, the undersigned finds Dr. Riley's report and resulting conclusions were supported by his medical records review of Petitioner, his interview with Petitioner, his neuropsychological testing of Petitioner, Petitioner's treatment records from correctional facilities, the discovery provided to Dr. Riley from the State, and the trial transcripts.

52. In summary, the Court finds both prongs of *Strickland* lacking here; to the extent the first prong of *Strickland* can arguably be found, the undersigned finds that the second prong is not present.

II. **Failure to call a reenactment expert:**

53. During the trial the undersigned allowed Petitioner to show the jury his version of how the shooting took place. Trial counsel testified at the post-conviction hearing that Petitioner was "enthusiastic" about the reenactment. Trial counsel decided to use the Petitioner in the reenactment because the defense private investigator advised

---

[4] Indeed, the trial attorneys sought a ruling prior to the trial starting that the State would not be allowed to enter lay opinion regarding Petitioner's mental health or his counseling records and mental health medication. The prohibition of such evidence was ordered with the agreement of the State.

8

trial counsel that the investigator had reservations concerning whether it was going to be possible for the investigator to reenact the shooting based upon how Petitioner had told them the shooting had occurred. Accordingly, trial counsel decided to have Petitioner re-enact the shooting himself because the Petitioner, who would be testifying, had the best understanding of what occurred on the night of the shooting.

54. Although the recollections of trial counsel on this point are not consistent with that recollection testified to by Petitioner, the Court finds the credibility and version of trial counsel more believable.

55. Trial counsel also pointed out the tactical risks of having someone other than Petitioner perform the re-enactment, e.g., if the third party performed the reenactment in a fashion different than Petitioner's description, and the likely cautionary instruction from the Court if someone other than Petitioner reenacted the scene. *See* State's Post-Hr'g Mem. at 8-9. Suffice it to find that neither prong of *Strickland* is present here either.

### III. Cell phone extraction:

56. At trial, there was evidence that the deceased had deleted over 1,200 text messages from her phone. Trial counsel decided to put that fact into evidence to make it appear that the deceased and her best friend were plotting against Petitioner. Trial counsel relied on the cell phone records provided by the State. They did not try to ascertain whether it was possible to obtain the deleted text messages, much less try to obtain them. Instead, trial counsel chose to cross examine the deceased's best friend about the missing texts and emphasize that the best friend could not produce the phone during closing argument. Finally, trial counsel testified that Petitioner was aware of this strategy.

57. The version above was disputed by Petitioner at this hearing. The Court finds the testimony of trial counsel credible, and the testimony of Petitioner not credible on this topic. Moreover, there was no evidence presented that the missing texts could have even been recovered before trial, much less that any of the missing texts would have been probative evidence. Even if there was evidence of the first prong of *Strickland* present here, something the undersigned specifically finds there was **not**, certainly there was **no** evidence presented that the second prong of *Strickland* was present. Again, the Court finds neither prong of *Strickland* generated by the evidence at hearing.

### IV. Lead detective(s) at prosecution table:

58. Petitioner contends that the alleged presence of **two** law enforcement officers

9

"sitting at counsel table", unobjected to by trial counsel, violated Petitioner's "constitutional due process rights." Petitioner claims further that allowing Detective Fiske to sit at counsel table "significantly changed the standard of review on appeal from abuse of discretion to obvious error." Petitioner also claims that appellate counsel was ineffective by not raising the issue during the appeal of the judgment. Petitioner's post-conviction counsel argues that as a result of both trial counsel and appellate counsel "failing to raise the issue of whether Detective Fiske's presence at the prosecution's table contravened Rule 615...it denied [Petitioner] his constitutional due process . . . . [T]his Court must order a new trial . . . ."

59. In response, the State first contends that only Detective Fiske sat at counsel table, and that Detective Bonnevie, "the co-primary investigating officer . . . sat in a chair behind counsel table just inside the bar."[5]

60. The Law Court has stated that "the exclusion or sequestration of witnesses is wholly discretionary in Maine, and further that the trial judge's exercise of discretion is reversible for abuse, there has never been a reversal on this ground." Field & Murray, *Maine Evidence* § 615.1 at 354 (6th ed. 2007); *see* M.R. Evid. 615; *State v. Rosario*, 2022 ME 46, ¶ 27, 280 A.3d 199 (quoting *State v. Pickering*, 491 A.2d 560, 563 (Me. 1985)).

61. Post-conviction counsel testified that it is "standard practice" for the primary investigator to sit at the State's table during homicide trials. The Court does not find that the failure of trial counsel, or appellate counsel, to raise an objection is an example of "ineffective assistance of counsel." Furthermore, there was not a scintilla of evidence presented at this hearing concerning how the unobjected-to allowance of the two troopers, one of whom never testified, somehow prejudiced the Petitioner. Again, the Court finds neither prong of *Strickland* present here.

**V. Failure to object to the victim's father wearing a t-shirt with the victim's picture on it in the presence of the jury:**

62. Petitioner contends that "[the deceased's] father [was] standing there with a big picture of Stephanie on it with a T-shirt. Right directly when the jury walked in, he stood right there with it." Petitioner contends further that he raised the issue with one of his trial counsel, who he says, "didn't seem very concerned. He said we'll get it taken

---

[5] At trial, State's counsel in his opening statement according to the trial transcript introduced the two detectives to the jury as "seated at counsel table are Maine State Police Detectives Jen Fiske and Tucker Bonnevie. They will be assisting [co-counsel] and I present the evidence to you over the course of the next week or so." Trooper Bonnevie was never called as a witness. Trooper Fiske testified that she was the primary detective in the case.

care of."

63. Both trial counsel testified at the post-conviction hearing that neither had any recollection of Petitioner making the above allegation to them. One attorney affirmatively testified that that he never saw the deceased's father in the courtroom wearing the alleged T-shirt, although he might have seen the T-shirt on the father either on the news or outside the courtroom. Trial counsel also testified convincingly to the Court that if deceased's father had done so in the courtroom, "we would have said something . . . to the judge."[6]

64. The Court finds trial counsel's testimony credible, finds the Petitioner's testimony on this point not credible, and accordingly Petitioner takes nothing on this point. Neither prong of the *Strickland* standard is met.

### *Conclusion:*

65. For the reasons stated above, the Court **denies** the Petition as amended for post-conviction review and relief.

The Clerk shall incorporate by reference this Decision and Judgment into the docket for this case.

Date: June 27, 2024

BY _/s/ Robert E. Mullen_
Robert E. Mullen, Chief Justice
Maine Superior Court

---

[6] The Court does not consider the footnote on State's Post-Hearing Memorandum at all.